1

1                 UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF WASHINGTON

2

```
3   UNITED STATES OF AMERICA,        )
                                     )
4            Plaintiff,              )   Nos. 12-CR-016-WFN-1
                                     )         12-CR-016-WFN-2
5   vs.                              )         12-CR-016-WFN-5
                                     )         12-CR-016-WFN-6
6   JERAD JOHN KYNASTON,             )         12-CR-016-WFN-7
    SAMUEL MICHAEL DOYLE,            )
7   BRICE CHRISTIAN DAVIS,           )   May 31, 2012
    JAYDE DILLON EVANS,              )   Spokane, Washington
8   TYLER SCOTT McKINLEY,            )
                                     )   Transcript of:
9                                    )   Second Pretrial Conference
             Defendants.            )   and Motion Hearing
10   _____)
```

11

12   BEFORE THE HONORABLE WM. FREMMING NIELSEN<br>SENIOR UNITED STATES DISTRICT JUDGE

13   APPEARANCES:

```
14   For the Plaintiff:        Russell E. Smoot
                               Assistant United States Attorney
15                             P.O. Box 1494
                               Spokane, WA  99210-1494
16

17   For Defendant Kynaston:   Robert R. Fischer
                               Federal Defenders of Eastern
18                             Washington and Idaho
                               10 North Post, Suite 700
19                             Spokane, WA  99201

20

21
     Reported By:              Debra Kinney Clark, RPR, CSR
22                             United States District Courthouse
                               P.O. Box 700
23                             Spokane, WA 99210
                               (509) 458-3433
24

25   Proceedings reported by mechanical stenography; transcript
     produced by computer-aided transcription.
```

1   APPEARANCES (Continued):

2   For Defendant Doyle:        George P. Trejo, Jr., Attorney at Law
                                701 North First Street, Suite 100
3                               Yakima, WA 98901-2203

4   For Defendant Davis:        Mark Prothero, Attorney at Law
                                Miller & Prothero
5                               421 West Riverside, Suite 868
                                Spokane, WA 99201
6

7   For Defendant Evans:        Nicolas V. Vieth, Attorney at Law
                                601 East Sherman Avenue, Suite 1
8                               Coeur d'Alene, ID 83814

9   For Defendant McKinley:     Richard D. Wall, Attorney at Law
                                221 West Main, Suite 200
10                              Spokane, WA 99201

11

12

13

14

15

16

17

18

19

20

21
    Reported By:                Debra Kinney Clark, RPR, CSR
22                              United States District Courthouse
                                P.O. Box 700
23                              Spokane, WA 99210
                                (509) 458-3433
24

25  Proceedings reported by mechanical stenography; transcript
    produced by computer-aided transcription.

1          (May 31, 2012; 9:32 a.m.)

2          THE COURTROOM DEPUTY:  <u>United States of America v.</u>

3  <u>Jerad John Kynaston, et al.</u>, Case No. CR-12-0016-WFN.  Time set

4  for second pretrial conference.

5          THE COURT:  And motions.  And I'm interested in the

6  defense motion to suppress the evidence.  Mr. Wall, you filed a

7  motion --

8          (The courtroom deputy and the Court conferred off the

9  record.)

10          THE COURT:  Oh.  Excuse me.  Yes.  I'm going to ask

11  Ms. Knutson to do a roll call for the defendants first.

12          THE COURTROOM DEPUTY:  For the defendants, we have

13  Robert Fischer with Defendant Kynaston, Defendant 1;

14  George Trejo, Jr., for Defendant 2, Mr. Doyle.  We have

15  Mark Prothero in place of David Miller for Defendant Davis,

16  Defendant 5; Mr. Nicolas Vieth for Defendant Evans, No. 6; and

17  Richard Wall for Defendant 7, Mr. McKinley.  And for the

18  government, we have Mr. Russell Smoot.

19          THE COURT:  Good to see you all here.

20          As I started to say, I'm interested in that motion to

21  suppress the evidence.  The change in the medical marijuana law

22  I think has a significant effect on this case.  Prior to

23  July 22nd of last year, it arguably was a crime to possess

24  marijuana in any amount.  But if you qualified under the medical

25  marijuana law, as I understand it, that statute gave you an

1  affirmative defense.

2      But then in July -- I think it was July 22nd -- of last

3  year, a new statute -- or -- the statute was changed.  And the

4  effect of that change is that you can't be charged.  In other

5  words, it's a total decriminalization as long as you complied

6  with the amounts of marijuana; in other words, if you complied

7  with the statute itself.

8      So, Mr. Wall, I think you've raised the issue.  The

9  affidavit which I've read does not make any reference at all to

10  the statute, nor does it contain any information or any

11  statement as to the amount of marijuana that the officers

12  suspected was there.  And if -- if it was -- if there's no

13  allegation that the state law had been violated, that raises the

14  issue as to whether or not it was a valid warrant, a valid

15  search.

16      There are two other issues that are related to this, and

17  that -- one is whether or not the good faith exception would

18  apply in view of the fact that the new law became effective

19  July 22nd and this search was the first day or two of November.

20  So there was a period of about three months in there.  Would

21  reasonable officers be expected to understand that the law had

22  changed?  And the warrant on its face arguably did not show

23  probable cause.  And secondly -- and I don't know how strong the

24  argument would be -- is there sufficient information in the

25  affidavit to raise the inference that the amount that the

1  officers suspected was there at the house would be in excess of

2  that which is allowed under the medical marijuana statute?

3      How do you want to proceed?  Mr. Smoot?

4          MR. SMOOT:  The government's ready.  I don't know if

5  the Court wants to hear from the defendant first or the

6  government.

7          THE COURT:  Well --

8          MR. SMOOT:  I mean, it's --

9          MR. WALL:  Judge --

10          MR. SMOOT:  -- somewhat of a -- oh.  Go ahead.  I'm

11  sorry.

12          MR. WALL:  I didn't mean to interrupt.  But my -- one

13  issue that I had just been discussing with co-defense counsel

14  prior to coming in this morning is that there was a motion filed

15  subsequent to the filing of our suppression motion to continue

16  the trial date and also continue dates for filing pretrial

17  motions and for hearing pretrial motions.  And I believe that

18  there's -- it's anticipated that there will be additional

19  motions to suppress the evidence based upon the search warrant

20  that have -- on other grounds, that may or may not have some

21  overlap.  And I don't know how the Court views whether or not

22  those motions affect whether or not the Court should hear this

23  motion at this time or not.

24          THE COURT:  Well, I don't know what those other

25  motions are going to be.  The Court is willing to continue this

1  hearing in anticipation of other motions and hear them all

2  together.

3      Mr. Fischer?

4      MR. WALL:  Yeah.  Maybe it would be appropriate to

5  hear from Mr. Fischer at this time.

6      THE COURT:  You have -- I know you have a 404(b)

7  motion pending, Mr. Fischer.

8      MR. FISCHER:  I do, Your Honor; and I also have a

9  motion to continue the pretrial and trial dates, and I filed

10  that May 11th.  And that's Document No. 167.

11      The basis for the motion, Your Honor, is:  As we know --

12  well, as this Court is very much aware of, having sat on the

13  bench for the several years that this Court has heard other drug

14  cases where there are qualifiers or predicates that could

15  enhance statutorily, under the guidelines, a punishment -- my

16  client -- it's been alleged, having reviewed the convictions of

17  my client in this state and other states, that there is

18  potential for those enhancements or pre-qualifiers --

19  qualifiers -- to enhance his punishment.

20      Having said that, then, we commonly try to work out

21  something with the government, or the government and the

22  defendant or defendants try to work something out prior to a

23  pretrial, and -- so that -- to avoid a filing of an 851.  And

24  that's for many reasons.  And I understand the reasons, and I

25  understand the reasons of the government -- that it has to put

1  its files in order, compare punishments to other defendants,

2  et cetera, and then come up with what it thinks is fair and

3  reasonable.  And then the defendant and defendants have to have

4  a chance, of course, to review that and give it time to -- to

5  look at it and compare it to what the actual outcome could be if

6  convicted.

7      So having said that, I received an unofficial plea

8  agreement from the government late Friday afternoon.  I wanted

9  to get it over to my client over the weekend, but prior

10 commitments in Benton County or Bonner County precluded that.

11 So the first time I could get to see my client was Tuesday, and

12 I provided that plea agreement.  And it's a fairly heavy penalty

13 within the plea agreement itself; and so I have -- and the

14 deadline, of course, was today to accept or reject.  And I'm

15 sure that Mr. Smoot would give more time for that.  But the idea

16 is is that you don't file any substantive motions until you can

17 reach some sort of plea or start negotiations and find an offer

18 that the government is willing to put forward to the committee.

19 So we haven't filed any substantive motions except for a

20 discovery motion that I had attached and that I had subpoenaed

21 today from -- I had issued a subpoena to the Spokane County

22 Records Department to provide an unredacted version of what I

23 attached to my motion to continue.  And that is a CAD report for

24 the -- that includes the investigations that began on

25 October 19th of 2011, or at least, according to the CAD report,

1  where the investigation was initiated by what appears to be

2  somebody unknown calling in to 911, indicating that there's --

3  that there's an underage drinking party and also several rooms

4  and greenhouses devoted to a marijuana grow -- interestingly

5  enough, at a different address.  And I received that, and it was

6  redacted.  And Mr. Smoot and I talked earlier before this

7  hearing; and he understood that perhaps I had gotten everything

8  I needed, and I didn't.  So I wanted those records today so that

9  I could try to file additional pretrial motions, which I think

10  are very important in this case, one of them being a motion to

11  suppress, if we can't get together on some sort of plea that's

12  acceptable for both parties.

13        THE COURT:  I think we have a prior provision in a

14  prior order that a motion filed by one defendant automatically

15  applies to all of them.

16        MR. FISCHER:  Correct.

17        THE COURT:  Don't we?  So no one has opted out, so

18  Mr. Wall's motion applies to all -- all defendants, as far as I

19  know.

20        MR. FISCHER:  Absolutely.  And what I would like to do

21  is also have the opportunity, once I get this information, which

22  Mr. Smoot indicated that he would get to me today -- the

23  unredacted version of this CAD report, which is instrumental in

24  additional motions.  So that's why I'm asking for a continuance.

25  So once I get this information from Mr. Smoot -- and he

1  indicated he'd get it to me ASAP -- then I can take a look at

2  the new information and file appropriate motions.

3       Now, I --

4            THE COURT:  Let me ask -- are you suggesting another

5  motion to suppress for different reasons than the one raised by

6  Mr. Wall?

7            MR. FISCHER:  Yes.  It would be a motion to suppress,

8  I guess, unreasonable searches and seizures under the Fourth

9  Amendment, obviously, and that the warrant that was issued is

10 also unsatisfactory -- the affidavit in support of it.

11            THE COURT:  For reasons different than those raised by

12 Mr. Wall?

13            MR. FISCHER:  Yes, Your Honor.

14            THE COURT:  All right.  Well, the Court has no problem

15 in giving you more time if you want to do that.  I think

16 Mr. Wall's motion is -- might be dispositive.

17            MR. FISCHER:  And it very well could be.  I've read

18 the motion, and I certainly do join in that motion.

19            THE COURT:  Well, if there are other motions you

20 anticipate that would strengthen Mr. Wall's motion or support it

21 in some other way, I'm glad to give you more time.

22            MR. FISCHER:  Well, Your Honor, if Mr. Wall's motion

23 is dispositive and -- or could be dispositive, and the Court

24 would entertain it today, certainly I'm in support of that.  I

25 was just advising the Court that I would be filing additional

1 motions, and one of them would be a suppression motion.  And I

2 think it would be for different reasons other than noncompliance

3 with state law.

4          THE COURT:  Well, how do you want to proceed?

5          MR. FISCHER:  I would ask for a continuance until --

6 at least to file additional motions -- into late July -- it's my

7 understanding the Court is not available in August -- and to

8 have my suppression motion heard in early September.

9          THE COURT:  How -- well, let me ask you this.  How

10 long would it take you to file your motion?

11          MR. FISCHER:  It would take me until the end of June.

12 And I say that, Your Honor, because I need to go over the

13 information that Mr. Smoot is going to give me; follow up on my

14 investigation to do that; and, in connection with the other

15 ongoing issues that I have, filing a cert. petition.

16          THE COURT:  Well, I'd rather not set this over into

17 September, for this reason.  If the motions have merit -- and,

18 on the surface, they appear to be good motions -- I'd like to

19 get them resolved because I anticipate -- or -- I suspect that

20 one or more of the defendants are in custody.

21          MR. FISCHER:  My client is in custody.

22          THE COURT:  So I would suggest a shorter time for

23 filing, a response by the government in the five days, and a

24 quicker hearing.

25          MR. FISCHER:  And when would the Court hear it?

1        THE COURT:  Well, we can hear it -- let's say you had
2  two weeks to file your motion.  Let's say by the 15th of June.
3  We could hear it sometime the last week of this month.
4        MR. FISCHER:  Your Honor, would it -- would the Court
5  be available the second week of July?
6        THE COURT:  We're in Yakima, Mr. Knutson, on the 9th?
7     (The courtroom deputy and the Court conferred off the
8  record.)
9        THE COURT:  So we're here 10th.  We're here July 10th.
10  Yes.
11        MR. FISCHER:  That would be -- that would be fine,
12  Your Honor.
13        THE COURT:  Mr. Smoot?
14        MR. SMOOT:  I was just going to indicate that the
15  present trial date is June 25th.  If the Court was looking at
16  the end of -- end of June for a hearing, it would seem that we
17  could get pleadings done by then.
18        THE COURT:  We'd have to continue the trial date,
19  obviously; and that would require that everyone be advised of
20  their -- well, no.  The speedy trial time runs out on the 19th
21  of July.  So there is time.
22     All right.  If you want to do that, if you want to support
23  Mr. Wall's motion with your own motion, I'm not going to
24  discourage you from doing that.  But I would suggest that then
25  you'd have till June 22nd to file; June 29th, the government's

1  response; a hearing on the motions, pretrial conference on

2  July 10th.

3        MR. FISCHER:  Very good, Your Honor.

4        THE COURT:  At what time, Ms. Knutson?

5     (The courtroom deputy and the Court conferred off the

6  record.)

7        THE COURT:  At 1:00.

8     Mr. Trejo?

9        MR. TREJO:  Your Honor, not to -- not to step on my

10 good friend Mr. Fischer's toes, but the -- we would discuss the

11 other motion to suppress that we anticipate filing in this case;

12 and it's apples and oranges, compared to Mr. Wall's issue that

13 he's presented to the Court.  The motion to suppress that we

14 anticipate filing deals with the possibility of a Franks hearing

15 of information that was omitted from the affidavit for search

16 warrant, the warrant -- what we perceive to be the warrantless

17 entry onto the property, the warrantless observation into the

18 residence, the --

19       THE COURT:  That's fine.  Can you get it all filed on

20 the --

21       MR. TREJO:  Yeah.  We can get it all filed in that

22 time.  But what I'm suggesting to the Court is there's no reason

23 not to hear Mr. Wall's motion today because we can go -- he can

24 go forward on that.  And then we can go forward on the other

25 one, if necessary.

1          THE COURT:  I have no problem with that.

2          MR. TREJO:  No, Your Honor.

3          THE COURT:  All right.  I started with a little

4   dialogue when we came out here.  Anybody take issue with what I

5   said as to the Court's understanding of the facts and the change

6   in the law as it may apply, and the issues?

7      I think, Mr. Smoot, you may have the laboring oar on this.

8          MR. SMOOT:  Thank you, Your Honor.

9      Respectfully, while the law may be in a constant state of

10  change and flux concerning marijuana within the state, that

11  doesn't -- that does not mean that whether or not a medical

12  affirmative defense or certain conditions precedent to the

13  commission of the general crime of manufacturing or distribution

14  or possession of marijuana simply negates the opportuni --

15  negates law enforcement's ability to investigate a potential

16  offense.  In this case, let's say that -- well, quite frankly,

17  Your Honor, I think that -- rather to -- rather than go into

18  detail, I think that the briefing is quite detailed on both

19  parties.  And I would submit that despite the change in the

20  wording from affirmative defense to may not be arrested,

21  contraband may not be seized, it does not repeal the general law

22  prohibiting the manufacture and distribution and/or possession

23  of marijuana within the state statutes.  And having that law

24  still in effect, RCW 69.50.401 still having effect, law

25  enforcement is still charged with the investigation of that

1  particular valid law.  It hasn't been repealed by the

2  legislature.  They certainly could have repealed that while

3  amending the language to the compassionate use statute.  They

4  did not.  Nor did Fry -- nor is there any indication that Fry

5  has been reversed or withdrawn by statute.

6      The bottom line is that in a case like this, law

7  enforcement was investigating what it believed to be a potential

8  offense, that being RCW 69.50.401, that being the manufacturing

9  of marijuana, a crime in Washington state, a crime in the

10  federal law.  In their search warrant, they put, in brief -- I

11  guess the Court has had the search warrant -- everything that

12  would typically be seen in a search warrant of an investigation

13  establishing probable cause for a marijuana grow.  There was the

14  odor of marijuana, there was excessive power usage, there was a

15  visual observation of marijuana stems through the window, there

16  was a visual observation of growing equipment, and there were

17  vehicles -- a vehicle that was parked at the property that was

18  tied back to a person that had a prior conviction for a

19  marijuana offense.  All of those things would stand alone on the

20  four corners of the affidavit to support probable cause to

21  search for a violation of 69.50.401.

22      THE COURT:  I think that's clear that -- had that

23  occurred before July 22nd.

24      MR. SMOOT:  Well, Your Honor, I think that --

25  here's -- here's the question, then.  What does a state law

1  enforcement officer have to put in an affidavit in order to

2  investigate a potential offense?  Not --

3          THE COURT:  Well, in this case, I think it's clear

4  that that officer said that there were more than 45 plants

5  visible through the front door.  That would indicate that the

6  grow was not in compliance with the medical marijuana act.  But

7  the affidavit was totally silent on the amount.  And I think

8  it's clear.  I disagree with you.  The language of 69.51A.040

9  says that -- in effect, that medical use of marijuana does not

10  constitute a crime.  So there has to be some indication, it

11  seems to me, in the search warrant that what was involved here

12  was marijuana in a quantity at least that was noncompliant with

13  the state law; and there's no reference to it.

14          MR. SMOOT:  Yes.  Your Honor, I think that that begs

15  the question, then:  How does law enforcement obtain that type

16  of information?  In fact, if law enforcement has all the

17  indications of a violation of the general marijuana statute but

18  has no ability to determine whether or not an individual is in

19  compliance with very strict, specific conditions precedent to

20  whether or not they violated that statute, then that

21  investigation can never be accomplished through a search

22  warrant.  In other words, Your Honor, search warrants are

23  simply whether that it's more probable -- that there's a

24  probability that evidence of a crime may be found in the

25  location searched.

1       Just because a search warrant is issued for a location
2   doesn't necessarily follow that law enforcement is always going
3   to find evidence of a crime.  In this case, the law enforcement
4   officers believed that it was likely that evidence of the
5   general marijuana crimes would be found at that location.  Had
6   they entered and they would have found one person in there with
7   a marijuana card and a 13-plant grow, then they would have had a
8   decision to make.  Have they violated the main general marijuana
9   law that we are -- we believe we have probable cause to
10  investigate, or have they not?  Whether it's simply no longer a
11  crime or whether it's an affirmative defense, the result is
12  still the same.  There has to be certain conditions precedent.
13  And when they show up and observe that those conditions are
14  precedent, then they can say:  All right; well, we were -- we
15  were mistaken.  Our search warrant was not fruitful.  But we
16  still had the probable cause to initiate the investigation to do
17  the search warrant.
18      In -- in -- what I wanted to add as well as -- one of --
19  one of the concerns, I believe, in this case or cases like this
20  is the way that the new -- the new provision is written.  The
21  United States would submit that it indicates that people may not
22  be arrested, contraband may not be seized if the conditions
23  precedent -- if it's compliant with the parameters of the
24  compassionate use provision.  Now, I understand that -- from the
25  defendant's reply that there's a disagreement in terms of the

1  word use of "may," "may not," "shall," "shall not."  But I would

2  submit that one of the reasons -- arguably, one of the reasons

3  for such language is protection of law enforcement.

4       Now, law enforcement, prior to the compassionate use

5  provision -- had they executed a search warrant, found marijuana

6  growing, found contraband, illegal contraband, present in a

7  place that they're executing a search warrant, and had they

8  leave it there, I would argue that they could potentially be

9  under some type of liability if something happens from leaving

10 contraband in a public -- in with the public in this type of

11 circumstance.  When the compassionate use law comes out and all

12 of a sudden now state law enforcement officers have to go into

13 residences like this or other buildings or other locations with

14 a search warrant that's been issued based on a belief that

15 there's going to be evidence of the general -- violation of the

16 general controlled substance act if they enter a place and they

17 find contraband in there, now they're in a position to where

18 they can make a decision as to say:  Okay; we were right.  There

19 was marijuana growing here.  Everything that we set forth in the

20 search warrant to obtain probable cause ultimately was correct.

21 We smelled it.  Everything.  They show up.  All right.  Here's

22 the circumstance where there's one person.  There's 13 plants.

23 I am ad libbing.  But let's say that they have their -- a

24 checklist, and they're checking it off.  Okay.  It looks like

25 all conditions are fine.  We've made a record of this.  We're

1   leaving.

2       Now something happens with that contraband.  There's a use

3   of that contraband by someone.  Something happens down the line.

4   Law enforcement is no longer liable for leaving that contraband

5   out in the public.

6       Now -- so it's kind of a twofold argument.  The United

7   States, again, believes that this is very simple.  It is a legal

8   argument.  The warrant itself within the four corners had

9   sufficient information for the violation of the general --

10  violation of the Washington controlled substance act -- law

11  enforcement, according to state law, state case law, that

12  predates the change in the wording of the compassionate use

13  statute.

14          THE COURT:  That's an important distinction.

15          MR. SMOOT:  I think it is important, yes, because it

16  has changed.  But what is the effect of that?  Fry is not --

17  there's no indication that Fry's general principle that law

18  enforcement doesn't to prove a negative to do the search warrant

19  or doesn't have to -- they would -- typically, they would have

20  to prove that all of the conditions precedent -- meaning every

21  single person, every single plant was accounted for, every

22  single condition that is required of the compassionate use

23  section, .040, which is still written in there -- if the person

24  complies, is in compliance with it, they would have to disprove

25  that first without any -- necessarily any way to get that

1  information in order to pursue what they believe may be a

2  violation of another offense.

3          THE COURT:  Well, it may be less complicated than

4  that.  Before July -- and I throw this out as one way to read

5  it.  Before July 22nd of last year, if law enforcement had the

6  same indications that the general marijuana statute was being

7  violated, they could charge the crime; and then the defendant

8  would have the affirmative defense that he or she was protected

9  because of the medical marijuana provision.

10     It seems to me that after July 22nd, the law has changed.

11  Possession or growing marijuana in an amount that is consistent

12  with the medical marijuana law is not a crime.  So you don't

13  have an affirmative defense.  You just can't be charged.  And

14  that's what concerns me in this case.  The affidavit doesn't

15  give any indication that there's a state crime that's been

16  violated.  It's true there's plenty of indication that marijuana

17  is growing, but there's no indication that it's growing in an

18  amount that takes it out of the medical marijuana exceptions.

19         MR. SMOOT:  Well, I would argue, Your Honor, that even

20  if there were two out of -- I don't know the sum total of how

21  many particular --

22         THE COURT:  Plants.

23         MR. SMOOT:  -- qualifications or conditions need to be

24  met.  But let's say that there's two conditions -- one, that

25  somebody has an authorization card and, two, that somebody has

1   less than a certain number of plants.  All right?  Even if they
2   had one of those, those conditions would still -- it would still
3   be a violation of the general provision if those conditions are
4   not met.  In other words, let's say that the person has no
5   authorization to use marijuana through the state and yet they
6   only have ten plants.  That still, arguably, falls under the
7   general provision.  So -- of the violation of possession or
8   manufacturing of marijuana.  So, in other words, if law
9   enforcement -- the plant count number suddenly may not be
10  necessary.  In fact, it would -- that's the type of factual item
11  that would arguably almost be impossible for any law enforcement
12  officer to put in an affidavit unless the marijuana plants were
13  growing within a publicly accessible location.  Inside a house,
14  it would be -- I don't think it would ever be seen in an
15  affidavit.
16          Arguably, Your Honor, as well, I would submit that there's
17  not an affirmative defense to investigation of a potential
18  crime.  Let's take this in a complete different context.  A
19  person can be charged for a crime -- for an offense that's
20  wholly unrelated to a search warrant.  In the context of a
21  federal drug warrant issued by the magistrate, a federal agency
22  goes in, believes absolutely that there's going to be evidence
23  of a drug-trafficking crime within a residence.  DEA goes in,
24  executes the search warrant.  While they're looking for drugs,
25  they don't find any drugs; but what they -- but they find a

1    firearm.  It just so happens that --

2           THE COURT:  In plain view.

3           MR. SMOOT:  In plain view or where they should be

4    looking for drugs.

5       Now they've gone in.  They've executed a search warrant on

6    the basis of a violation of the drug laws.  They go in.  They

7    find out that they have no evidence that the defendant violated

8    the drug laws.  But the defendant ultimately violated another

9    law.  That defendant can be charged.  That defendant can be

10   convicted of that offense even though the defendant never

11   violated the law that the search warrant was being executed for.

12   In this case --

13          THE COURT:  Using your hypothetical, if the search

14   warrant had said that law enforcement anticipates that the

15   house -- in the house is a firearm, but it doesn't say that the

16   occupant of the house is a felon --

17          MR. SMOOT:  Uh-huh?

18          THE COURT:  -- the search warrant is not valid, is it?

19          MR. SMOOT:  Well, it depends.  I mean, if there's not

20   something that ties it in to the firearm offense, then it may

21   be -- it may be that -- I mean --

22          THE COURT:  The reason I said that is it's not illegal

23   to have a firearm in your house.  I hope not.

24          MR. SMOOT:  That -- as do I, Your Honor.

25          THE COURT:  Yeah.  And by the same token, it's not

1  illegal to have some marijuana in your house as long as it

2  complies with the medical marijuana statute.

3          MR. SMOOT:  And that is the question.

4          THE COURT:  In other words, as to amount and that

5  you're sick and you need it.

6          MR. SMOOT:  That is the question, Your Honor; and that

7  is the "if" that's there -- if it complies.  If it doesn't

8  comply, then it's illegal in both the state of Washington and

9  the federal government.

10          THE COURT:  Doesn't the affidavit have to -- does not

11  the affidavit need to contain an allegation that -- that state

12  law is being violated for some reason; in other words, that the

13  officer had reason to believe that there's an excessive amount

14  or that the occupants don't qualify?  In other words, there has

15  to be something within the four corners of the affidavit to

16  indicate that that -- not only is marijuana there, but there is

17  marijuana there that takes it out of the exception of the

18  medical statute?

19          MR. SMOOT:  I would respectfully argue no.  And the

20  reason for that is because if the search warrant provides

21  probable cause for a violation of a statute, then that is

22  sufficient.  And the -- and our -- and the United States'

23  position is that the search warrant provided probable cause for

24  the violation of the general statute.

25          THE COURT:  Okay.  I agree with that.  But this

1 statute says that if you have marijuana in accordance with the

2 terms of that chapter, it does not constitute a crime.  It's not

3 a crime, according to the statute.

4          MR. SMOOT:  That is --

5          THE COURT:  So if the affidavit says that law

6 enforcement is aware of the fact that there's marijuana in the

7 house, period, is it a valid statute -- I mean -- warrant?

8          MR. SMOOT:  I believe it's valid to investigate a

9 crime that fits with -- if it provides probable cause for a

10 crime that is on the books.

11          THE COURT:  And --

12          MR. SMOOT:  And it may --

13          THE COURT:  -- by saying that, you're referring to the

14 general statute.

15          MR. SMOOT:  Right.  It may not support a -- the

16 investigation ultimately may not support a conviction.  It may

17 not support an arrest.  It may not support a seizure.  But for

18 investigative purposes alone, if the warrant supplies probable

19 cause for a law that is on the books, then law enforcement

20 has -- has a legal authority to execute that search -- that

21 warrant.

22          THE COURT:  All right.  I think I understand your

23 position.

24          MR. SMOOT:  Thank you.

25          THE COURT:  Mr. Wall?  Your turn.

1          MR. WALL:  Thank you, Your Honor.

2      Your Honor, Mr. Smoot is a very good lawyer, a very

3  intelligent and a very creative lawyer; and I commend him for

4  being able to find a way to take a position on this because I

5  think the Court stated the issue very clearly at the beginning

6  of this hearing and that it is pretty black and white.  When you

7  read the amendment to the medical marijuana laws in 2011, it's

8  very clear what the legislature was trying to do.  It became

9  obvious that making the medical use of marijuana an affirmative

10  defense didn't accomplish what the legislature was trying to

11  accomplish because being subject to arrest, imprisonment, and

12  all the consequences of that wasn't protecting people who were

13  using marijuana for medical purposes.  When all you have is an

14  affirmative defense, it's not much protection.  You can still be

15  hauled out of your home and thrown in jail, and you may sit

16  there for a long time until you get a chance to put your defense

17  on.  So it was obvious the statute wasn't doing what it was

18  intended to do; and the change was made, and it's very clearly

19  stated.  As you pointed out more than once, it's no longer a

20  crime to use marijuana or to possess marijuana as long as you

21  conform to the requirements of the statute.

22      Now, one of the basic fallacies of Mr. Smoot's argument is

23  that he wants to read the statutes as if they're totally

24  separate and not connected in any way, but you cannot do that.

25  And I think in our reply brief, we cited the cases to the Court

1   that you must read statutes together, as a whole, to determine

2   the legislative intent.  And so Mr. Smoot says, well, ignore the

3   medical marijuana law; look only at the general statute; and we

4   can use that alone to determine whether or not there's probable

5   cause to make a -- commit a -- probable cause that a crime was

6   committed.  But, in fact, you cannot do that because it's not

7   a -- it's not a question of whether or not, if you read

8   something in isolation, you can argue a crime was committed.

9   You have to read the statute in its totality to determine what

10  is and what is not a crime, just as Your Honor has pointed out.

11  So that's the basic fallacy, is that you cannot read one part of

12  the statute separate from another, as if they don't exist

13  together, because they do exist together.

14          Mr. Smoot then takes that and tries to argue that,

15  essentially, if you have reason to investigate, you have enough

16  information to get a warrant, which is, again, not really what

17  the law is.  You can investigate based on suspicion.  You can

18  investigate based on a hunch.  But to get a warrant, to get

19  authorization to go where otherwise you're not legally allowed

20  to go, you have to have probable cause.

21          So he argued quite a bit about, well, you know, it

22  doesn't -- maybe you're going to go in and not find enough

23  evidence to support a charge, but certainly that -- that

24  happens -- that can happen any time you're investigating a crime

25  and you're -- and you're executing a warrant, because a warrant

is only based on probable cause, not absolute proof.  So that

argument really doesn't help any because that's always the case.

So the question still has to always come back to:  Does

this affidavit give the issuing judge enough evidence to

determine that, more likely than not, a crime was being

committed and the evidence of that crime would be found at the

place the officers wanted to search?  And as you have pointed

out more than once, there's nothing in this affidavit to

indicate that what the officers saw at that residence indicated

any use or possession or manufacture of marijuana that did not

conform with Washington's medical marijuana law.  There's just

no mention of anything that would allow the issuing judge to say

this doesn't -- this isn't medical marijuana use in conformance

with the Washington law.  I've seen --

THE COURT:  There are limits, are there not, as to how

much is justified?

MR. WALL:  Yes.  There's nothing to say there's more

than 45 plants, which would be the maximum you could have even

if you have a communal grow.  There's nothing to say that there

is possession of more than the allowed amount.  There's no

mention of whether or not anybody associated with this address

has or does not have authorization to use medical marijuana.

You know, some of these things may be difficult for law

enforcement officers to obtain, admittedly.  It may be

difficult.  It may not be easy.  But the Constitution doesn't

1   make exceptions just because it's difficult for officers to get

2   information or to get evidence.  The Constitution still requires

3   probable cause.

4           THE COURT:  Now, the affidavit does talk about a

5   strong odor.  It talks about seeing, apparently in plain sight,

6   through the window, plants and roots and plastic tarp.  There's

7   indications they saw piping, greenhouses, frames that are

8   typically used, a high power consumption.  Is there enough to

9   suggest by implication that what's going on exceeds the

10  limitations of the marijuana statute, the medical marijuana

11  statute?

12          MR. WALL:  I think maybe there could have been, Your

13  Honor.  But what I think is obvious is that these officers

14  weren't up to date on the law.  They had no clue that they

15  needed to give that information to the judge.

16          THE COURT:  And that raises another question I had.

17  There's only about 90 days between the change in the law and

18  when all this happened.  Does that raise the good faith

19  exception possibility?

20          MR. WALL:  I would say that's -- very clearly shows

21  that there's not good faith because any well-trained officer is

22  going to be informed prior to the law going into effect that on

23  this date, the law changes, and you need to change how you

24  behave out in the field.

25          THE COURT:  So in other words, the officers should

1  have been aware of it by July 23rd, the day after the law came

2  into effect?  That's your position?

3          MR. WALL:  Just as -- just as it is for someone who is

4  charged with a crime that ignorance of the law is not an excuse,

5  it's not an excuse for a law enforcement officer either.

6      But to get back to your other question, the officers may

7  have been able to very easily here construct an affidavit that

8  would have been sufficient.  They may have been able to say:

9  Based on my experience -- and detailing that experience for the

10 judge -- this kind of power usage is only associated with

11 something well in excess of 45 plants.  And the law only allows

12 45 plants in any one grow, even if you have ten people together,

13 doing a communal grow.  We saw other indications that the amount

14 of -- the size of the grow area, the amount of piping or

15 whatever -- the amount of soil we saw present clearly

16 demonstrates in excess of the allowed amount of plants -- and

17 explaining that for the judge who is reading this.  But they did

18 none of that.  They did absolutely none of that.

19     Now, I don't know -- I mean, they showed power usage; but I

20 don't know what that means.  I don't -- I can't imagine the

21 judge knew either.  Unless you're an experienced marijuana

22 grower, you wouldn't have any idea whether that power usage

23 indicates more than the allowed amount of plants.  And that's

24 the problem.  They just didn't address it in any way in the

25 affidavit.

1      So I think Your Honor has, from the beginning, had this

2 pegged right exactly as it is.  The law changed dramatically.

3 It's a huge change to go from an affirmative defense to this is

4 not a crime.  I think it's clear the law enforcement officers in

5 this case either weren't aware of it or certainly didn't have

6 that in mind when they wrote this affidavit because they didn't

7 address that issue at all.  It's like -- Mr. Smoot said it.

8 Yeah.  They put in a typical affidavit for establishing that

9 marijuana was being grown, but that's all that it establishes.

10 And that affidavit probably would have been -- would have been

11 sufficient probably before July 22nd, 2011.

12          THE COURT:  Oh, I think it's clear it would have been.

13          MR. WALL:  But afterwards, it's clearly not.

14      Thank you.

15          THE COURT:  Now, before, Mr. Smoot, you reply, any

16 other defense counsel have anything you want to say?  Mr. Vieth,

17 Mr. Trejo, Mr. Fischer?

18          MR. VIETH:  No, Your Honor.  Thank you.

19          MR. FISCHER:  No, Your Honor.

20          MR. TREJO:  Your Honor, just briefly.

21      Your Honor, as I -- as I listened to the government's

22 argument, it appears that, in part, what they're arguing is they

23 should be justified in going into the residence with the search

24 warrant and then thereafter determining that, hey, we were

25 right.

1             THE COURT:  Or wrong.

2             MR. TREJO:  Or wrong.  And if we were wrong, sorry.

3        But the law does not permit them to do that.  They're

4   required to do additional investigation when they have a hunch.

5   And when the government argues that they would never be able to

6   enter, well, that's not true, because how many countless cases

7   have we seen throughout the years where they use informants,

8   they use other investigative techniques in order to gain enough

9   information to establish probable cause for -- to enter a

10  residence?  And in this case, they simply didn't have sufficient

11  facts to warrant the entry.

12       In terms of the power usage, there's -- I've never seen a

13  situation in all the marijuana cases that I've done where

14  there's been any expert opinion or any finding that a certain

15  amount of kilowatts is designated per plant.  Instead, you could

16  have quite a bit of electric consumption in a particular room

17  and just have one plant in there.  There's no correlation

18  between the two, unless they would have provided additional

19  information.

20            THE COURT:  Mr. Fischer, were you going to say

21  something?

22            MR. FISCHER:  No, Your Honor.

23            THE COURT:  Anybody else?  Mr. Vieth?  Anybody else?

24      Mr. Smoot, any reply?

25            MR. SMOOT:  Your Honor, I think in brief the

1   argument's before the Court.  The United States stands by its

2   argument at this point and indicates that the entire affidavit

3   has been provided to the Court within the pleadings.

4   　　　　THE COURT:  Yeah.  We -- yes.  We have the entire

5   affidavit, as far as I know.

6   　　　　MR. SMOOT:  That is correct.  And while we haven't

7   gone into much discussion, I think that the United States has

8   briefed in terms of the good faith exception.  I simply want to

9   make sure that that's before the Court as well.

10   　　　Respectfully, the United States would again submit that

11   there is probable cause for the violation of the Uniform

12   Controlled Substances Act; specifically, RCW 69.50. -- I think

13   401 is what I cited.

14   　　　　THE COURT:  What if the -- what if we just forgot

15   about the controlled substance act and the only statute we had

16   was this one that we're talking about, 69.51A.040?  That's the

17   only statute.

18   　　　　MR. SMOOT:  You mean the only statute we have in

19   existence?

20   　　　　THE COURT:  No.  The only statute that applies to this

21   issue that we're talking about.  You don't have the general

22   statute.  You just have -- you just have the one.

23   　　　　MR. SMOOT:  Well, arguably, Your Honor, if we didn't

24   have the general statute, I don't think we'd have the exception

25   statute.

1           THE COURT:  Well, I guess it's not a very good

2   question.  But the point I'm trying to make is:  If you just had

3   the one statute that I just cited and you didn't say in your

4   affidavit that there was reason to believe that the quantity

5   involved exceeded the amount allowed by the medical marijuana,

6   this statute says that would not be a crime.  In other words,

7   you have to allege that not only there's some marijuana, but it

8   exceeds that which is allowed by the medical marijuana statute,

9   wouldn't you?  And if you don't have probable cause to believe

10  that, then there's no crime.

11          MR. SMOOT:  Forgive me.  I'm trying to follow Your

12  Honor.  I think if --

13          THE COURT:  Maybe I'm not very clear in my question.

14          MR. SMOOT:  I think if the general provision wasn't in

15  existence and only a provision that says this is a crime if you

16  don't do A, B, and C -- in other words --

17          THE COURT:  You're -- you're relying on the general

18  controlled substance act as a justification for getting a search

19  warrant.

20          MR. SMOOT:  Yes.  For investigative purposes.

21          THE COURT:  And I'm suggesting that that statute,

22  which says, in effect, there's no crime in possessing marijuana

23  as long as you comply with the medical marijuana act --

24          MR. SMOOT:  So if there was no general statute, then

25  the statute -- then the statute that would be in existence would

1  be written something to the effect that if a person doesn't do

2  A, B, and C, then they have violated the law.

3          THE COURT:  Well, is that --

4          MR. SMOOT:  And -- and --

5          THE COURT:  Go ahead.

6          MR. SMOOT:  -- I guess if that were the case, then

7  investigations would certainly be conducted differently, if that

8  were the only statute in existence.

9      The difficulty is that at this point, the statutes apply

10 not only for investigative purposes but also prosecutorial

11 purposes and clear down the line.  In this case, again, the

12 United States submits that the local officers had a search

13 warrant that supported probable cause for a violation of state

14 law.  They also had a search warrant, arguably, that would have

15 supported probable cause had it been presented in federal court,

16 under federal standards.  So in this case, the law enforcement,

17 local law enforcement, executed an author -- an issued search

18 warrant based on probable cause of a violation of an existing --

19 currently existing law.

20          THE COURT:  State law.

21          MR. SMOOT:  State law -- correct -- as well as while

22 they -- while the state law enforcement officers sought it from

23 a state judge, it still would be a violation of federal law.

24 And the search warrant would support probable cause had it

25 been -- arguably, had it been presented to federal court.

1          THE COURT:  Yeah.  But that's not the situation.

2          MR. SMOOT:  But the situation is, however, Your Honor,

3   that law enforcement was conducting an investigation, was

4   conducting a violation -- an investigation of a law on the

5   books.  And ultimately, had they entered the premises with the

6   valid -- with the valid -- and I say "valid" in terms of being

7   signed by the state court judge.  Had they entered, found out

8   that, in fact, what was occurring was not a violation of the

9   law, then there would have been -- arguably, the investigation

10  would have stopped; or at least it would not have resulted --

11  gone to the prosecutorial stage, which laws also cover.

12      Simply put, at this point of the investigation of issuing a

13  search warrant -- of obtaining a search warrant, the law

14  enforcement officers were investigating the general provision

15  that arguably is still valid in the state of Washington and as

16  well as federal law for what -- for what it's worth in terms of

17  federal law.

18          THE COURT:  Well, my inclination is that the search

19  warrant was not complete; and my inclination is that the

20  execution, therefore, was improper, which would then logically

21  suggest that the motion to suppress should be granted.

22      Now, I -- assuming that's the ruling, what is it that would

23  be suppressed?  I guess you'd suppress the physical evidence you

24  found in there.  And if I understand it, certain defendants made

25  certain statements following the execution of the search

1  warrant.  Wouldn't those necessarily be referred to as the

2  fruits of the invalid execution?

3          MR. SMOOT:  Most likely, Your Honor.  I don't want to

4  commit as though there may be an exception.  But -- you know --

5  most likely, it would be.

6          THE COURT:  Yeah.  That wasn't dealt with in any great

7  length in the briefing, but I assume that would be the case.

8          Well, I'm going to take a look at a couple of cases and get

9  an order out in a day or two.  But right now, there are a couple

10  of other motions pending.  There's a 404(b) motion filed by you,

11  Mr. Fischer.

12          MR. FISCHER:  Yes, Your Honor.

13          THE COURT:  It seems appropriate that that should be

14  granted.  And if I understand it correctly, the government

15  probable has turned over any 404(b) evidence that you have.  But

16  I think the responsibility also would be on the government to

17  turn over any 404(b) evidence that comes into your possession or

18  you become aware of.

19          MR. SMOOT:  Yes, Your Honor.  And as typically

20  happens, sometimes during trial interviews, more comes out.  And

21  it's the government's position to turn that over.

22          THE COURT:  Now, we have a trial date of June 25th.

23  Speedy trial time out is July 19th.  I'm suggesting we leave

24  those dates as is.

25          MR. SMOOT:  Your Honor, I would just advise the Court,

1  as I have advised the parties, that if this case proceeds to

2  trial that, as the Court and the parties are aware, there is a

3  question of plant count involved in this case.  Simply put,

4  there was approximately five to six hundred growing plants.

5  There were five to six hundred plants that had been removed, and

6  there were just roots remaining of the plants.  In terms of the

7  conspiracy charge, the United States has indicated that if this

8  case goes to the jury that it would put that plant count

9  question before the jury, which would ultimately mean a

10 superseding indictment.  None of the facts would change with the

11 superseding indictment, but the -- it would likely be sought

12 either next week or, if the continuance goes beyond the first

13 grand jury setting in July, then it would probably be sought

14 then.

15         THE COURT:  I suppose, though, if this motion to

16 suppress is granted, that would moot that issue.

17         MR. SMOOT:  That is correct.

18         THE COURT:  And if -- if the motion is not granted,

19 then what I'm going to do is set another pretrial conference in

20 short order and reschedule.

21         MR. SMOOT:  All right.

22         THE COURT:  Anybody else have anything they want to

23 talk about?

24         MR. FISCHER:  No, Your Honor.

25         MR. TREJO:  No, Your Honor.

1        MR. VIETH:  No, Your Honor.  Thank you.

2        THE COURT:  We're in recess.

3    (The proceedings recessed at 10:32 a.m.)

C E R T I F I C A T E

I, DEBRA KINNEY CLARK, do hereby certify:

That I am an Official Court Reporter for the United States District Court at the Eastern District of Washington;

That the foregoing proceedings were taken on the date and at the time and place as shown on the first page hereto; and

That the foregoing proceedings are a full, true and accurate transcription of the requested proceedings, duly transcribed by me or under my direction.

I do further certify that I am not a relative of, employee of, or counsel for any of said parties, or otherwise interested in the event of said proceedings.

DATED this 18th day of June, 2012.


/s/Debra Kinney Clark

Official Court Reporter
United States District Court
Eastern District of Washington