1  Alison K. Guernsey
2  Jeffrey Dahlberg
   Federal Defenders of Eastern Washington & Idaho
3  306 E. Chestnut Ave.
   Yakima, WA 98901
4  (509) 248-8920

5  Attorney for Defendant
   Jerad John Kynaston
6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
The Honorable Wm. Fremming Nielsen

| United States of America, | No. 2:12-CR-0016-WFN-1 |
|---|---|
| Plaintiff, | **Reply Re ECF No. 746** |
| v. | |
| Jerad John Kynaston, | |
| Defendant. | |

The Government argues several erroneous legal positions and asserts numerous factual inaccuracies in its response to this Court's discovery order.[1] First, the Government claims that it has not violated Rule 16 with late discovery disclosures. This is incorrect. Second, it argues that the material it withheld is not *Brady* material

---

[1] Mr. Kynaston joins those legal arguments contained within the pleading filed by Mr. McKinley's attorney and will not re-articulate the same arguments herein.

Reply: 1

and is not discoverable. This, again, is inaccurate. Third, it repeatedly mischaracterizes the nature of the hearing that this Court held on May 18, 2017, in an attempt to argue that counsel for the defense willfully misrepresented the status of discovery to gain tactical litigation advantage. This is patently false.

## I. Analysis

### A. The Government Has Violated Rule 16, Which Requires Disclosure of Items Material to Preparing the Defense and Materials that it Intends to Use in its Case-in-Chief at Trial.

The record belies the Government's argument that it did not violate Rule 16. As indicated in the attached chart, *see* Exhibit A, with respect to Mr. Kynaston, the discovery that the Government belatedly disclosed implicates two separate provisions of Federal Rule of Criminal Procedure 16—16(a)(1)(E)(i) and 16(a)(1)(E)(ii). Not only is the material discoverable under Rule 16, but it should have been disclosed within fourteen days of arraignment or "promptly" thereafter under Local Criminal Rule 16.

#### 1. The Free-Talk Reports Are Discoverable Under Rule 16(a)(1)(E)(i), as the Item Is Material to Preparing the Defense.

Federal Rule of Criminal Procedure 16(a)(1)(E)(i) requires the Government to disclose any item "within the government's possession, custody, or control" that "is material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). The Ninth Circuit has interpreted Rule 16 more broadly than *Brady*. "Information that is not exculpatory or impeaching may still be relevant to developing a possible defense." *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013). In fact, "[e]ven inculpatory

Reply: 2

evidence may be relevant." *Id.* As the Ninth Circuit has reminded courts "[m]ateriality is a low threshold; it is satisfied so long as the information . . . would have helped to prepare a defense." *United States v. Soto-Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016) (internal quotation marks omitted). Moreover, Rule 16(a)(1)(E)(i) does not discriminate between admissible or inadmissible evidence. *Id.*

Here, the free-talk reports that were disclosed on May 16 fall within Rule 16(a)(1)(E)(i) for two separate reasons. First, as outlined in the attached chart, the statements from all four individuals who met with law enforcement tended to show that the grow was medical in nature. In *United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016), the Ninth Circuit concluded that a medical marijuana grow in compliance with state law cannot be prosecuted federally. In other words, a state-law-compliant grow would be a complete defense to the federal charge. *See Soto-Zuniga*, 837 F.3d at 1000–001 (discussing the types of claims that qualify as a "defense" within the meaning of Rule 16(a)(1)(E)(i), and noting that it includes claims that "'refute the Government's arguments that the defendant committed the crime charged'" (quoting *United States v. Armstrong*, 517 U.S. 456, 462 (1996)).

Second, the free-talk reports that were disclosed on May 16 fall within Rule 16(a)(1)(E)(i) with respect to Mr. Kynaston because they contain information tying the firearm in this case to someone else. As outlined in Exhibit A, Peter Magana never mentioned Mr. Kynaston being in possession of the firearm during his March 23,

Reply: 3

2012 free talk, despite law enforcement's repeated questions about the firearm. Not only did Mr. Magana fail to mention Mr. Kynaston's name in conjunction with the firearm, but he told the Government that the firearm belonged to Mr. Davis. Moreover, Mr. Davis confirmed Mr. Magana's statements by admitting that the pistol was "his." *See, e.g., United States v. Casterline*, 103 F.3d 76, 78 (9th Cir. 1996) (noting that firearm "[o]wnership may be circumstantial evidence of possession").

Given that the Government is required to prove that Mr. Kynaston was in either actual or constructive possession of the firearm in order to prove a violation of 18 U.S.C. § 922(g), *see* 9th Cir. Model Crim. Jury Instruc. 8.65, statements of various witnesses who failed to tie the firearm to Mr. Kynaston are both exculpatory within the meaning of *Brady*, *see infra*, but also material to the preparation of a defense within the meaning of Rule 16(a)(1)(E)(i).

Although Rule 16 does not articulate a time frame during the above-referenced discovery must be disclosed, this Court's Local Rules do. Under Local Criminal Rule 16, material that is discoverable under Rule 16 shall be produced within fourteen days of arraignment. *See* L. Crim. R. 16(a). Furthermore, Local Criminal Rule 16(c) imposes a continuing obligation on the Government to disclose discoverable material that has come into its possession "promptly." L. Crim. R. 16(c). Waiting approximately five years after the generation of these free-talk reports to produce them to the defense is hardly prompt. The failure to disclose the information prior to May 16, 2017, violates

Reply: 4

both Federal Rule of Criminal Procedure 16(a)(1)(E)(ii) and Local Criminal Rule 16(a) and 16(c).

### 2. The Judgment Produced in Response to this Court's Recent Order Is Discoverable Under Rule 16(a)(1)(E)(ii), as the Government Will Likely Introduce the Judgment in its Case-in-Chief.

Additionally, the Government's recent disclosure of Mr. Kynaston's prior Washington felony judgment potentially runs afoul of Federal Rule of Criminal Procedure 16(a)(1)(E). In relevant part, Rule 16(a)(1)(E)(ii) requires that the Government produce any item that it "intends to use . . . in its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(E). Here, only in response to the Court's recent discovery order, the Government filed notice acknowledging that it just produced a judgment for Mr. Kynaston's prior Washington felony conviction. [*See* ECF No. 750 at 2]. It also indicated that it may be required to use that judgment in order to prove an essential element of Count 7 of the Third Superseding Indictment. [*Id.* at 2–3]. Again, while Rule 16(a)(1)(E) does not specify when the Government must disclose the items within its possession, this Court's Local Criminal Rules do, and Local Criminal Rule 16 mandates disclosure with fourteen days of arraignment.

In short, the Government's argument that its late disclosures do not violate Rule 16 is without merit. As outlined above and in Exhibit A, as to Mr. Kynaston, the late-disclosed discovery implicates two separate provisions of Rule 16.

//

Reply: 5

B. **The Late-Disclosed Information Is Also Exculpatory, and the Government Was Under an Obligation to Disclose that Material Under *Brady* and the Washington Rules of Professional Conduct.**

In addition to falling within the ambit of Rule 16, the Government's late disclosures also contain exculpatory material that was required to be disclosed under both *Brady v. Maryland*, 373 U.S. 83 (1963), and the Washington Rules of Professional Conduct, as incorporated by the Court's Local Rules.

1. **The Late-Disclosed Evidence Was of the Type Required to be Produced Under *Brady v. Maryland*, 373 U.S. 83 (1963).**

The Government's argument that the late-disclosed information does not qualify as *Brady*-type information is likewise inaccurate. "*Brady* material is any evidence material either to guilt or punishment which is favorable to the accused, irrespective of the good faith or bad faith of the prosecution." *United States v. Hanna*, 55 F.3d 1456, 1459 (9th Cir. 1995). "The *Brady* rule encompasses impeachment evidence as well as exculpatory evidence." *Id.* (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)). Evidence is "material" within the meaning of *Brady*, if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995).

In other words, whether information falls within *Brady* is backwards looking. Reframed as a pretrial, discovery obligation, a strict interpretation of *Brady* would require the Government produce *only* that exculpatory or impeachment evidence that would have produced a different outcome had it not been produced. However, courts

Reply: 6

(and the Government) have appropriately recognized that given "the special role played by the American prosecutor in the search for truth in criminal trials," *Strickler v. Greene*, 527 U.S. 263, 281 (1999), the pretrial obligation must be broader, *id.* (referring to "the prosecutor's broad duty of disclosure").

As a result, *Brady* in the pretrial context is oftentimes a shorthand way to refer to the Government's "broad obligation to disclose exculpatory evidence." *Id.* In fact, one district court in the Central District of California has held that "the pretrial standard under *Brady* is evidence that may reasonably be considered favorable to the defendant's case and that would likely lead to admissible evidence." *United States v. Sudikoff*, 36 F. Supp. 2d 1196, 1201 (C.D. Cal. 1999).

Here, as outlined above and in Exhibit A, many of the Government's late disclosures are the type of information that would fall within *Brady*. The late-disclosed evidence tends to negate the defendants' guilt or mitigate the offenses charged. Again, the evidence shows the medical nature of the marijuana grow and, in the case of Mr. Kynaston, bears upon whether he possessed the firearm.

The Government argues that the late-disclosed evidence is "cumulative" and therefore not "material." [ECF No. 746 at 9–10]. This is incorrect. First, for the reasons that Mr. McKinley's counsel articulated, the Government's analysis as to whether the late-disclosed evidence was "material" is inapplicable in this pretrial context. Again, materiality is necessarily a standard that is backwards looking; it does

Reply: 7

not govern a prosecutor's forward-looking pretrial obligation.

Second, the information in the late-disclosed discovery is simply not cumulative. As outlined in Exhibit A, the Government had never before disclosed the information contained within many of the statements given during the free talks. In addition, even those statements that bore upon the same subject matter (e.g., the firearm ownership or marijuana growing process) were different in substance and source in ways that are highly relevant to the defense.

A good example is a comparison of Mr. Evans's statements to law enforcement about the firearm following his arrest in November 2011 as compared to his counseled statements during his free talk approximately five months later. As outlined in Exhibit A, Mr. Evans initially told law enforcement that Mr. Davis had brought the firearm to the residence and that Mr. Kynaston had control of the firearm at the time of the execution of the search warrant. But at the free talk when questioned "about the pistol (Glock)," Mr. Evans not once mentioned Mr. Kynaston in connection with the firearm.

The cases on which the Government attempts to rely to argue that the late-disclosed evidence in this case is cumulative are distinguishable. Those cases address cumulative *impeachment* evidence that was already presented to the jury, as opposed to the type of generally exculpatory factual assertions or omissions at issue here. In *United States v. Wilkes*, 662 F.3d 524 (9th Cir. 2011), for example, the Ninth Circuit

Reply: 8

held that additional *impeachment* information gleaned from a proffer with the Government was cumulative because the "grounds for impeachment [were] no secret to the jury." *Id.* at 536; *see also United States v. Kohring*, 637 F.3d 895, 908 (9th Cir. 2011) ("[T]he newly-disclosed information regarding Allen's memory problems would have been merely cumulative if presented at trial. At trial, Kohring's attorney exploited Allen's poor memory before the jury in both cross-examination and closing argument.").

In short, the type of information that the Government failed to disclose here is the type of information that falls within its pretrial *Brady* obligations. The substance of the free talk statements are not cumulative and tend to negate the defendants' guilt

### 2. The Government Was Obligated to Turn Over the Discovery Under the Washington Rules of Professional Responsibility.

In addition to being the type of information that would fall under *Brady*, the Government in this case was likewise obligated to disclose the free-talk reports under the Washington Rules of Professional Conduct ("RPC").

"Notwithstanding the constitutional duties imposed on prosecutors by *Brady* and its progeny, the prosecutor has special professional responsibilities." *United States v. Acosta*, 357 F. Supp. 2d 1228, 1246 (D. Nev. 2005). Washington State RPC 3.8 provides, in relevant part, that a "prosecutor in a criminal case shall . . . (d) make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense."

Reply: 9

Wash. R. Prof. Conduct 3.8(d).[2] "Thus, prosecutors in this district and elsewhere are obligated to timely disclose to the defense evidence or information known to the prosecutor that tends to negate guilt of the accused or mitigate the offense, whether or not these disclosures meet *Brady*'s materiality standard." *Acosta*, 357 F. Supp. 2d at 1246–47 (interpreting Nevada's Rules of Professional Conduct, which mirror Washington's rules).

As the Third Circuit highlighted in *United States v. Starusko*, 729 F.2d 256 (3d Cir. 1984):

> It is clear that "a prosecutor who intentionally fails to make disclosure to the defense, at the earliest feasible opportunity, of the existence of evidence which tends to negate the guilt of the accused as to the offense charged," violates certain standards of professional conduct.

*Starusko*, 729 F.2d at 264 (quoting Standards for Criminal Justice § 3-3.11); *see also In re Kline*, 113 A.3d 202, 213 (D.C. 2015) ("[W]e hold that Rule 3.8(e) requires a prosecutor to disclose all potentially exculpatory information in his or her possession regardless of whether that information would meet the materiality requirements of *Bagley, Kyles,* and their progeny."); *cf. Runningeagle v. Ryan*, 686 F.3d 758, 772 (9th Cir. 2012) ("Ethical duties beyond those imposed by *Brady* and the Due Process Clause

---

[2] This Court has incorporated the Rules of Professional Conduct of the Washington State Bar in its Local Rules by authorizing attorney discipline for an attorney who engages in conduct violating the applicable Washington RPC. *See* Local R. 83.3

Reply: 10

may also compel prosecutors to disclose exculpatory evidence at any time they become aware of it.").

Here, as outlined above and in Exhibit A, the late-disclosed discovery tends to negate the guilt of the defendants with respect to the totality of the charges. Moreover, the information was plainly in the Government's actual possession, and disclosure of the information was not timely. The Government's actions violated RPC 3.8(d).

### C. The Fact that the Government Obtained these Statements During a Free Talk Does Not Override the Government's Disclosure Obligation.

The Government also argues that it failed to disclose the free-talk information prior to May 16 because it is generally concerned about the safety of individuals who met with law enforcement and its contractual obligations to these individuals. [ECF No. 746 at 16]. This is just a post-hoc rationalization undermined by the facts.

First, there is no evidence anywhere in the record that the individuals here who engaged in the free talks harbored safety concerns. Moreover, at the very least, the Government should not have been concerned about disclosing Mr. Davis's and Mr. Evans's own statements to their own counsel. Yet, they did not. *See supra* Part I.A.1. This undermines the Government's purported safety rationale.

Second, although the defense disagrees, it is the Government's position that the free-talk statements contained no new information. But if that were the case, then it is unclear how the individuals who met with law enforcement a second time would be in

Reply: 11

any worse a position safety wise than they were when they provided their initial statements to law enforcement. Again, the Government's position as to the content of the free talks undermines its concern over safety.

Third, the Government argues that disclosure of the free-talk statements would violate a "contractual agreement between the United States and the person electing to participate in a free talk," [ECF No. 746 at 16], yet the Government has produced no evidence that such a contract existed. But even assuming that the Government had a contractual obligation to not disclose the material gleaned from the free talk, it would be an unenforceable contract. The Government has cited no authority for the proposition that two parties are empowered to contract around the due-process obligations one of those parties owes to a third.

Fourth, the Government's position that it withheld this information for safety and contractual reasons is wholly undermined by the fact that two of the active Assistant U.S. Attorneys on the case denied the existence of these free-talk reports and one of those AUSAs then admitted that he had been unaware of them until they were provided to him by the DEA. *See infra* Part D. These facts tend to lead to the conclusion that the reports were not disclosed because the original AUSA on the case had failed to apprise the then-current AUSAs about their existence.

The defense understands the need to protect cooperating witnesses, but not at the expense of the constitutional rights of defendants. If the Government were truly

Reply: 12

concerned about balancing its obligations to cooperators and defendants alike, then it could have sought the Court's review of the free talk materials years ago. Tellingly, however, it did not. Nor, in fact, did it do so when defense counsel learned that the free-talk reports existed. The record in this particular case belies the Government's claim that there was a legitimate reason to withhold the material it suppressed in an effort to protect those who gave statements.

### D. The Defense's Assertions Have Proven to Be Accurate, Grounded in Fact, and Wholly Justified the Court's Discovery Order.

Finally, the Government also spends much of its response criticizing the defense for failing to provide specifics about the contents of the newly disclosed discovery at the hearing and implying that the defense withheld information from the Court to gain a litigation advantage. This is untrue, and in making this argument, the Government fails to recognize the purpose of the May 18 hearing and the procedural posture in which it arose.

First, defense counsel provided vague information to the Court about the contents of the discovery because the defense had not yet had the opportunity to review all of the material and do a thorough comparison of that new discovery as compared to what the Government had previously disclosed. In fact, this inability to review the precise nature of the new discovery (given the timing of the disclosure) was the crux of the problem that brought the parties to Court in the first instance. The Government disclosed the discovery less than forty-eight hours prior to several

Reply: 13

anticipated change-of-plea hearings, and the defense needed the opportunity to review the material thoroughly prior to proceeding. In other words, the Government's complaint about the defense's vague disclosures is a product of its own actions. Had the Government disclosed the material in a timely manner, then the defense would have had sufficient time to review it prior to the hearing and could have offered a more detailed analysis of why it believed the information was exculpatory.[3]

Second, contrary to the Government's implication, the purpose of the May 18 hearing was not to adjudicate a *Brady* claim such that the defense was required to arm

---

[3] The Government also criticizes undersigned counsel for failing to disclose the content of the new discovery to the media when approached by a reporter after the hearing. [ECF No. 746 at 2–3 n.3]. This position is disingenuous. Not only had the defense lacked the opportunity to review the material in detail, but every time the Government discloses discovery, it is accompanied by a letter that prohibits re-disclosure. Undersigned counsel's refusal to provide information to the media was in accordance with the defense's discovery agreement with the U.S. Attorney's Office.

Furthermore, the Government is simply wrong in its assertion that undersigned counsel instead provided the quote to the media that is contained within footnote three of its response. [ECF No. 746 at 2 n.3]. The transcript of the May 18 hearing makes crystal clear that undersigned counsel made the statement contained within footnote three not to the news media, but in court and on the record. [*See* ECF No. 755 at 10].

Reply: 14

itself with legal authority and set out its claim immediately. Rather, the purpose of the hearing was for the defense to request a continuance, a discovery order, and a new pretrial-motions deadline in light of the perceived content of the new discovery, the timing of the disclosure, and the method of the late disclosure.[4] Again, the material appeared exculpatory; it was disclosed right before the scheduled change-of-plea hearings; and, equally concerning, it was disclosed *only* after attempts by the defense to obtain the information before the hearing and *only* after the Government had affirmatively represented that the requested discovery did not exist.

As noted at the hearing, undersigned counsel had a conversation with Mr. Ohms and AUSA Patrick Cashman about these free talks following a conversation with co-defendant Peter Magana's attorney, Bob Caruso. During that conversation, Mr. Caruso indicated to undersigned counsel that he did not anticipate that the Government would call Mr. Magana as a witness because what he had to say was "not

---

[4] In fact, the Government was well aware of what the defense would be requesting and arguing. After receiving the first batch of the newly disclosed discovery, undersigned counsel contacted AUSA Timothy Ohms to ask him about the material and to explain that given the content, timing, and method of disclosure, the defense would be requesting a continuance and discovery order from the Court. Mr. Ohms's response was *not* that the information was not exculpatory, but instead that the defense "could do what it needed to do" in light of the disclosures.

Reply: 15

all that helpful to the Government" and that it would mirror what he had said in a free talk. When undersigned counsel followed up with Mr. Ohms and Mr. Cashman about Mr. Caruso's comments on May 11, 2017, she requested production of Mr. Magana's and other's statements.

Both Mr. Ohms and Mr. Cashman said that the defense was mistaken about the existence of free-talk reports, they did not "believe any existed," but that they would "scrub the file" to make sure. However, even that was not enough to get the discovery. It was only after a follow-up inquiry that the Government, on May 16, produced the requested information. And when undersigned counsel had a conversation about the new information with Mr. Ohms on May 17, he stated that he "didn't know what [counsel] wanted him to do" about the disclosures. He stated that he "didn't know about the reports" previously and had done all he could do upon learning about them, which was to disclose them.

Given that AUSA Ohms and AUSA Cashman were apparently unaware of the existence of free-talk reports during which AUSA Russell Smoot was present, defense counsel harbored (and still harbors) serious concerns about whether there is a process at the U.S. Attorney's Office to ensure that one attorney on a case is keeping other counsel informed as to what discovery exists and making sure that the defense receives all of the information to which it is entitled under the U.S. Constitution and criminal rules. [*See* ECF No. 755 at 10]. In light of the method under which this

Reply: 16

discovery was disclosed, regardless of its substance, the May 18 hearing was an opportunity to seek the Court's assistance in ensuring that the Government complied with its obligations. And by issuing the discovery order, the Court did just that.

## II. Conclusion

In short, the Government has possessed exculpatory material for approximately five years and disclosed the material only after being directly approached by defense counsel and only after first denying that it existed. As outlined above, the Government was under an obligation to disclose this material in a timely manner pursuant to Federal Rule of Criminal Procedure 16, *Brady*, and the Washington Rules of Professional Conduct, yet it did not. The Government's concern about its reputation should fall on deaf ears. As the Supreme Court aptly cautioned in *Kyles v. Whitley*, "a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence," *Kyles*, 514 U.S. at 439, lest the prosecution find itself on the wrong side of justice.

//

Dated: June 28, 2017.

Reply: 17

By <u>s/ Alison K. Guernsey</u>
Alison K. Guernsey
4667366, NY
Federal Defenders of Eastern Washington and Idaho
306 East Chestnut Avenue
Yakima, Washington 98901
(509) 248-8920
(509) 248-9118 fax
Alison_Guernsey@fd.org

<u>s/Jeffrey Dahlberg</u>
Jeffrey Dahlberg
5343967, NY

**Certificate of Service**

I hereby certify that on June 28, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: Assistant U.S. Attorneys, Russell Smoot, Timothy Ohms, and Patrick Cashman.

<u>s/ Alison K. Guernsey</u>
Alison K. Guernsey

Reply: 18